Rebecca A. MACHETTI, a/k/a Rebecca A. Smith, Petitioner,

v.

L. Q. LINAHAN, Warden, Georgia Women's Correctional Institution, Respondent.

Civ. A. No. 79–210–MAC.

United States District Court, M. D. Georgia, Macon Division.

June 29, 1981.

Mary Ann B. Oakley, Atlanta, Ga., Jack Greenberg, New York City, Anthony Amsterdam, Stanford, Cal., for petitioner.

Sysan V. Boleyn, Atlanta, Ga., for respondent.

WILBUR D. OWENS, Jr., Chief Judge:

Petitioner seeks federal habeas corpus relief under 28 U.S.C.A. § 2254 (1977). She requests that this court grant a writ of habeas corpus or, in the alternative, hold a full evidentiary hearing on all issues which she has presented and then grant a writ of habeas corpus.

This case has been under consideration in one form or another by state and federal courts in excess of a total of six years. Petitioner was convicted of two counts of murder in the Superior Court of Bibb County on March 1, 1975. Following a jury trial she received two consecutive death sentences. On direct appeal her sentences and convictions were affirmed by the Georgia Supreme Court. *Smith v. State*, 236 Ga. 12, 222 S.E.2d 308 (1976), *cert. denied, Smith v. Georgia*, 429 U.S. 932, 97 S.Ct. 339, 50 L.Ed.2d 302 (1976). A petition for rehearing was denied on January 10, 1977. On

January 13, 1977, petitioner filed a petition for a declaratory judgment and/or presentence hearing and stay of execution in the Bibb County Superior Court. This petition was denied, and the denial was affirmed by the Supreme Court of Georgia. *Smith v. State,* 238 Ga. 655, 235 S.E.2d 375 (1977), *cert. denied,* 434 U.S. 878, 98 S.Ct. 232, 54 L.Ed.2d 159 (1977), *rehearing denied,* 434 U.S. 961, 98 S.Ct. 496, 54 L.Ed.2d 323 (1977). Petitioner, on January 9, 1979, then filed a petition for a writ of habeas corpus in the Superior Court of Baldwin County, Georgia. After a two-day hearing that petition was denied on May 9, 1979. A notice of appeal was filed by petitioner on May 30, 1979. Her application for a certificate of probable cause to appeal was denied by the Supreme Court of Georgia on July 10, 1979, and a motion for reconsideration was denied by that court on July 17, 1979. The petition under consideration was filed in this court on August 30, 1979, and referred to the United States Magistrate who issued proposed findings of fact and conclusions of law on March 24, 1981. Thereafter petitioner filed her objections to those proposed findings of fact and conclusions of law.

The record before this court among other things contains transcripts of the petitioner's trial (over 1,200 pages) and state habeas corpus hearing (over 300 pages); a ninety-two-page order of the Honorable Joseph B. Duke denying petitioner's state habeas petition; various depositions and affidavits offered by petitioner as supportive of her contentions; over 1,200 pages of a transcript of an evidentiary hearing in *People v. Moore;* and, briefs of the parties regarding the instant petition.

This court has carefully considered each contention made by the petitioner. The record has been scrutinized to determine if any of the elements of § 2254(d)[1] which would overcome the statutory presumption of correctness accorded the state court determination and entitle petitioner to a hearing exists. The court has been unable to find anything which would warrant such a hearing. Upon review of the petition, the record before the court, and the report of the United States Magistrate, the court finds that the allegations of deprivation of constitutional rights contained in the petition are of no merit.

Except for the Magistrate's suggestions as to whether petitioner established a prima facie case of unconstitutional jury box composition as delineated by the Supreme Court of the United States in *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), this court approves and adopts the Magistrate's proposed findings of fact and conclusions of law in their entirety. The court makes the following additional com-

1. 28 U.S.C. § 2254(d) provides:

In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct, unless the applicant shall establish or it shall otherwise appear, or the respondent shall admit—

(1) that the merits of the factual dispute were not resolved in the State court hearing;
(2) that the factfinding procedure employed by the State court was not adequate to afford a full and fair hearing;
(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State court proceeding;
(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;
(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding; or
(7) that the applicant was otherwise denied due process of law in the State court proceeding;
(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produced as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record.

ments and findings as to the issues of (1) ineffective assistance of counsel, (2) jury box composition, and (3) application of the death penalty.

## (1) *Ineffective Assistance of Counsel*

Petitioner contends in her objections to the "Proposed Findings of Fact and Conclusions of Law" of the United States Magistrate (Objections) that the state habeas corpus court's decision as to the effectiveness of her counsel was based on an invalid standard, and thus must be reconsidered in the light of a recent United States Supreme Court case establishing the standard to be used in determining whether there was effective assistance of counsel. Specifically, petitioner contends that the state habeas court used the old standard which made a distinction between retained and appointed counsel, with retained counsel being subject to a *less* stringent standard. In *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) the Supreme Court stated that the use of different standards depending on whether counsel was retained or appointed is improper; retained counsel should be subject to as stringent a standard as appointed counsel. As petitioner has noted, this standard has since been utilized by the Fifth Circuit in *Kemp v. Leggett*, 635 F.2d 453 (5th Cir. 1981) (Objections p. 12).

Even assuming that *Cuyler* applies retroactively to this case, a careful reading of Judge Duke's order in the state habeas proceeding shows that his decision as to the effectiveness of petitioner's counsel was not based on the improper dual standard. It is true that Judge Duke referred to the dual standard which he stated was found in federal decisions. His decision however did not rest on these cases or on the now disapproved of less stringent standard for retained counsel. Prior to making reference to this practice in the federal courts, Judge Duke cited *Pitts v. Glass*, 231 Ga. 638, 203 S.E.2d 515 (1974) as delineating the standard in Georgia for determining the effective assistance of counsel ("counsel reasonably likely to render and rendering reason-

ably effective assistance"). He then stated that the "Fifth Circuit Court of Appeals in *MacKenna v. Ellis*, 280 F.2d 592, 599 (5th Cir. 1970), interpreted this standard more fully to mean 'not errorless counsel and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance.' " (Order of Judge Duke at p. 51). *Both* of these Fifth Circuit cases dealt with *appointed* counsel, *not* retained counsel. As explained *supra*, under the old dual system the standard for determining the effectiveness for appointed counsel was more stringent than that for retained counsel. Consequently, by citing *Pitts* and *MacKenna* as the applicable standard for determining whether petitioner had effective assistance of counsel, Judge Duke applied the harder "appointed counsel" standard to Mr. Hawkins, even though Mr. Hawkins was *not* appointed. If anything, this would tend to militate in petitioner's favor; thus, there can be no inference that Mr. Hawkins "got off easy" by being judged effective under a dual system subsequently discredited by the Supreme Court of the United States.

## (2) *Jury Composition*

■ Petitioner alleged in Paragraph 90–92 of her petition that she was indicated and convicted by grand and traverse juries drawn from jury boxes from which women were unconstitutionally excluded. The Magistrate suggests that there is no merit to these claims. In her objections petitioner contends that she was deprived of constitutionally adequate representation in said jury boxes of her peers—women—because of a state statute allowing women to opt out of jury service; she says that statutory procedure was a "clear denial of Basic Due Process rights and the right to a trial by a representative jury." According to petitioner, the fact that the relevant statute (Georgia Code Ann. § 59–124, Repealed by Acts 1975, pp. 779, 780) was not attacked prior to the U. S. Supreme Court decision in *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979) does not make that statute any less unconstitutional as to her and said jury boxes. Finally, petitioner

contends that *Duren* "merely clarified" *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975).

In considering petitioner's contention as to the composition of the jury boxes—as far as women are concerned—it is important to look at the chronology of events from 1975 to the present: In January of 1975, the United States Supreme Court in *Taylor* held that a statute automatically *excluding* women from jury service unless they *opted* to be included by filing a written request for jury service, was unconstitutional. In February 1975, petitioner was tried and convicted, and on March 1, 1975, she was sentenced to death. Georgia Code Ann. § 59–124 was repealed by Acts 1975, pp. 779, 780. After exhausting her avenues of direct appeal, petitioner on January 9, 1978, filed a petition for writ of habeas corpus in the Superior Court of Baldwin County. On January 9, 1979, the United States Supreme Court in *Duren* decided that a state statute which allowed women by request to *opt out* of jury service was unconstitutional.

As suggested by the Magistrate, *Taylor* —although decided before this case came to trial—is not applicable because it does not reach the question at issue here. The statute struck down in *Taylor* was an "opt-in" statute; *i. e.* women were automatically *excluded* from the jury list unless they opted to serve. Georgia Code Ann. § 59–124, was an "opt-out" statute, meaning that women were automatically *included* unless they opted *not* to serve. It is this "opt-out" type of statute which was held unconstitutional in *Duren.* Consequently, the issue presented here is whether *Duren,* decided approximately four years after petitioner's trial, will be applied retroactively to her case.

In determining whether or not *Duren* should be applied retroactively to this case, the court need only look to a case decided by the Supreme Court six days after *Duren.* In *Harlin v. Missouri,* 439 U.S. 459, 99 S.Ct. 709, 58 L.Ed.2d 733 (1979) a case involving a statute like Ga.Code Ann. § 59–124, Justice Powell in his opinion concurring in the judgment expressed the view that the wis-

est approach in fashioning a satisfactory retroactivity doctrine "contemplates . . . that courts apply a new rule retroactively in cases still pending on direct review, whereas cases on collateral review ordinarily would be considered in light of the rule as it stood when the conviction became final." 439 U.S. at 460, 99 S.Ct. at 710 (citation omitted).

In the present case the "new rule" is the *Duren* decision, which rendered invalid opt-out statutes like Ga. Code Ann. § 59–124. It would apply to petitioner's case if her case was "still pending on *direct* review." (emphasis added). However, there can be no argument that petitioner's case is before this court on *collateral* review, and it was in that posture at the time the "new rule" (*Duren*) was made. As a result it must be considered "in light of the rule as it stood when the conviction became final." 439 U.S. at 460, 99 S.Ct. at 710. When petitioner's conviction became final the rule was that although "opt-in" statutes were unconstitutional, "opt-out" statutes were constitutionally sound.

Because *Duren* is not applicable to petitioner's case it was not necessary for the Magistrate to consider whether or not the three elements of a prima facie case established by *Duren* had been met. This court is in agreement with and adopts the remainder of the Magistrate's proposed findings as to this contention, including the finding that petitioner has failed to show that anything other than Georgia Code Ann. § 59–124 contributed to the underrepresentation of women in said jury boxes.

### (3) *Application of the Death Penalty*

In his proposed findings and conclusions the Magistrate recommended that petitioner's claims that the death penalty as applied in her case is unconstitutional be denied. Petitioner now contends that the Magistrate mistakenly relied on *Spinkellink v. Wainwright,* 578 F.2d 582 (5th Cir. 1978). Petitioner claims that "[t]hat case is no longer good law but has been effectively overruled by *Godfrey v. Georgia,* 446 U.S. 420 [100 S.Ct. 1759, 64 L.Ed.2d 398] (1980)"

which, according to petitioner, "entirely destroys the legal premise upon which *Spinkellink* was based." A reading of both of these cases does *not* call for the conclusion demanded by the petitioner. *Spinkellink* is obviously in harmony with *Godfrey* and consequently remains good law.

### Other Contentions

■ On Pages 28 and 29 of her objections to the proposed findings and conclusions petitioner lists five contentions which she claims the Magistrate failed to address "to any meaningful degree" to wit: (1) the death sentence is unconstitutionally cruel and unusual punishment as applied to her, a co-conspirator non-trigger person in Florida at the time of the killings; (2) petitioner's constitutional rights were violated by a conviction-prone jury; (3) petitioner's constitutional rights were violated in that she did not receive a noncapricious sentencing process; (4) petitioner received the death penalty in a manner which discriminated on the basis of race, geography, and poverty; and (5) the jury which convicted and sentenced petitioner did not believe that she would be executed.

After reading the record of the proceedings below, and after considering petitioner's brief as to these contentions, this court is convinced that these contentions are not accurate statements of what occurred in her conviction and sentencing proceedings, and that they are without possible merit. At best they are arguments pertaining to matters not found in this record.

Based upon the proposed findings of fact and conclusions of law of the Magistrate which are adopted by this court, and upon the considerations and determinations above-stated, the court concludes that petitioner is entitled to neither an evidentiary hearing nor to a writ of habeas corpus.

Accordingly, Rebecca A. Machetti's petition for habeas corpus relief is hereby DENIED IN ITS ENTIRETY.