**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Charles Allen TUTTLE and Dean Frederick Vereen, Defendants-Appellants.**

**No. 82–8163.**

United States Court of Appeals, Eleventh Circuit.

April 16, 1984.

Rehearings and Rehearing En Banc Denied June 4, 1984.

Robert Altman, Federal Public Defender, Paul H. Kehir, Atlanta, Ga., court-appointed, for defendants-appellants.

Richard B. Kuniansky, Atlanta, Ga., for plaintiff-appellee.

Before VANCE and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

VANCE, Circuit Judge:

Charles Allen Tuttle and Dean Frederick Vereen were convicted of conspiracy to distribute cocaine and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and § 846. On this appeal from their convictions they raise numerous issues, only one of which merits our attention here.[1] Appellants assert that their sixth amendment right to be tried by a jury drawn from a source representing a fair cross-section of the community was violated because the petit jury wheels in the Atlanta division of the northern district of Georgia underrepresent blacks. Appellants alternatively urge that this underrepresentation violates

---

1. A second challenge concerns alleged unconstitutional discrimination in the selection of grand jury forepersons in the northern district of Georgia. We decide this issue against appellants on the basis of *United States v. Sneed*, 729 F.2d 1333 (11th Cir.1984).

the statutory provisions of the Jury Selection and Service Act of 1968. For reasons that appear below we reject appellants' arguments and affirm their convictions.

■ There can no longer be any doubt that the sixth amendment guarantees a criminal defendant the right to a jury selected from a group representing· a fair cross-section of the community. *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979); *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). Obviously, a perfect match between the composition of a community and the composition of a jury venire is not possible, given the limitless variations in human characteristics, and the Constitution does not require so much. The Supreme Court in *Duren* set forth the elements a defendant must establish to demonstrate a prima facie violation of the fair cross-section requirement:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

439 U.S. at 364, 99 S.Ct. at 668.

■ Appellants here, like others before them, stumble on the second requirement of *Duren*. While the Supreme Court has never pronounced an immutable threshold disparity that a defendant must show, *Gibson v. Zant*, 705 F.2d 1543, 1547 (11th Cir.1983), this circuit has consistently required an absolute disparity of over 10%

between the underrepresented group's proportion of the general or age-eligible population and its representation on the venire before a prima facie case is established. *Butler v. United States*, 611 F.2d 1066, 1069–70 & n. 9 (5th Cir.) (9.14% insufficient), *cert. denied sub nom. Fazio v. United States*, 449 U.S. 830, 101 S.Ct. 97, 66 L.Ed.2d 35 (1980); *United States v. Maskeny*, 609 F.2d 183, 190 (5th Cir.) ("as much as ten percent" insufficient), *cert. denied*, 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980). This court has rejected an equal protection challenge to a grand jury venire that, under one alternate stipulation of facts, underrepresented blacks by 9.67%. *United States ex rel. Barksdale v. Blackburn*, 639 F.2d 1115, 1126–27 (11th Cir.) (en banc), *cert. denied*, 454 U.S. 1056, 102 S.Ct. 603, 70 L.Ed.2d 593 (1981);[2] *see also Thompson v. Sheppard*, 490 F.2d 830 (5th Cir.1974), *cert. denied*, 420 U.S. 984, 95 S.Ct. 1415, 43 L.Ed.2d 666 (1975) (absolute disparity of 11% did not require compilation of new jury list.)

The district court found that blacks constitute 25% of the general population of those counties comprising the Atlanta division of the northern district of Georgia and 18.67% of the master wheel of jurors for that division, producing an absolute disparity of 6.33%. Appellants dispute the findings of the trial court, but since appellants concede that the figures most favorable to them show a disparity of 9.1%, we need not address the correctness of the district court's findings.[3] Because appellants' evidence shows an insufficiently stark absolute disparity, we reject their sixth amendment argument.[4]

---

**2.** The prima facie case under the equal protection clause is "virtually identical" to that under the sixth amendment, *Machetti v. Linahan*, 679 F.2d 236, 241 n. 6 (11th Cir.1982), *cert. denied*, 459, U.S. 1127, 103 S.Ct. 763, 74 L.Ed.2d 978 (1983), and this court has often treated the threshold disparity requirement the same under both types of challenge. *See, e.g., Gibson*, 705 F.2d at 1547; *see also Machetti*, 679 F.2d at 241 & n. 6.

**3.** Appellants, while arguing that blacks are not fairly represented, urge us to examine the dis-

parity with respect to all "non-whites." They also contend that the qualified jury wheel rather than the master wheel is the appropriate point of reference.

**4.** Appellants argue that county voter registration lists—the sole source of jury lists in the Atlanta division of the northern district of Georgia—reflect racially discriminatory voter registration practices by state and local officials and that the federal court's jury lists are tainted by this discrimination. Because of the allegedly discriminatory origins of the juror lists, appellants con-

■ Appellants raise a separate statutory challenge on the basis of the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1867. As appellants recognize, not every technical violation of the Act justifies judicial relief; rather, the deficiency must constitute a "substantial failure to comply" with the Act. *Id.* § 1867; *see also United States v. Evans*, 526 F.2d 701, 705 (5th Cir.), *cert. denied*, 429 U.S. 818, 97 S.Ct. 62, 50 L.Ed.2d 78 (1976). This determination requires "that the alleged violations of the Act be weighed against the goals of the statute." *United States v. Davis*, 546 F.2d 583, 589 (5th Cir.), *cert. denied*, 431 U.S. 906, 97 S.Ct. 1701, 52 L.Ed.2d 391 (1977). This balancing in turn requires a defendant to show a significant adverse impact on the composition of an average jury. *See United States v. Hawkins*, 661 F.2d 436, 443 (5th Cir. Unit B 1981), *cert. denied sub nom. McCain v. United States*, 456 U.S. 991, 102 S.Ct. 2274, 73 L.Ed.2d 1287 (1982); *Maskeny*, 609 F.2d at 191; *United States v. Goff*, 509 F.2d 825, 826–27 (5th Cir.), *cert. denied*, 423 U.S. 857, 96 S.Ct. 109, 46 L.Ed.2d 83 (1975).

■ In *United States v. Goff* this court held that a disparity between the presence of a group in the general population and the group's presence on a federal jury list that translated into an underrepresentation of 1.4 persons on an average 23 person grand jury did not demonstrate a "substantial failure to comply" with the Jury Selection and Service Act. 509 F.2d at 826–27. This disparity was held insufficient both for blacks, whose average presence on grand juries dropped from 6.0 to 4.6, and for food stamp recipients, whose representation fell from 2.4 to 1.0. Similarly, in *United States v. Hawkins* the defendants argued that the procedures used in selecting grand juries for the middle district of Georgia did not "substantially proportionally represent[ ]" each division within the district as required by 28 U.S.C. § 1863(b)(3). The court rejected the challenge even though one division was underrepresented by 2 persons on an average 23 person grand jury panel. 661 F.2d at 443.[5]

The holdings in these cases clearly establish that the disparity argued by appellants does not rise to the level of a substantial failure to comply with the Act. Appellants urge us to calculate impact using 25% as the percentage of blacks in the general

---

tend, the threshold absolute disparity should be lowered. They look for support to *Bryant v. Wainwright*, 686 F.2d 1373 (11th Cir.1982), *cert. denied*, — U.S. ——, 103 S.Ct. 2096, 77 L.Ed.2d 305 (1983), in which a panel of this court stated that, although an absolute disparity of 7.4% failed to establish a prima facie equal protection violation, "[i]f these same figures were combined with an easily manipulative selection procedure, we might reach a different conclusion." *Id.* at 1377.

Since defendants rest their challenge on the sixth amendment, under which discriminatory intent is immaterial, *Duren*, 439 U.S. at 368 n. 26, 99 S.Ct. at 670 n. 26; *Machetti*, 679 F.2d at 241 n. 6, we are unsure how this allegation aids their cause. The *Bryant* panel itself declared that "[t]he statistical comparisons in the case ... do not establish a sixth amendment violation." 686 F.2d at 1378 n. 4. At any rate, the argument fails because appellants do not assert that the judges of the northern district of Georgia, who adopted county voter registration lists as the sole source of names for petit jury wheels, have themselves discriminated or that the procedures by which names on the voter registration lists are placed on jury wheels are discriminatory. We note as well that the decision of the full court in *Barksdale*, uncited by the *Bryant* panel, reflects a minimum requirement of over 10% absolute disparity in an equal protection challenge even when other evidence of discrimination exists. After quoting the Supreme Court's language in *Swain v. Alabama*, 380 U.S. 202, 208–09, 85 S.Ct. 824, 829–30, 13 L.Ed.2d 759 (1965) that "purposeful discrimination based on race alone could not be 'satisfactorily proved by showing that an identifiable group in a community is underrepresented by as much as 10%,' " *Barksdale*, 639 F.2d at 1122, the court declared that "[w]hether or not *greater* disparities constitute prima facie evidence of discrimination *depends upon the facts of each case.*" *Id.* (emphasis added); *cf. Duren*, 439 U.S. at 368 n. 26, 99 S.Ct. at 670 n. 26 (in an equal protection challenge, a significant statistical disparity is necessary to show discriminatory effect as well as purpose).

5. Challenges to the geographical distribution of a jury list are governed by the "substantial failure to comply" qualification. 28 U.S.C. § 1867.

population[6] and 17% as the proportion of blacks on the qualified jury wheel. If 25% of an average 12 person petit jury were black, the jury would contain 3.00 blacks; if 17% were black, the same jury would include 2.04 blacks. This difference, less than one juror out of twelve, is comparable to that in *Hawkins,* and we therefore conclude that the result in *Hawkins* controls our decision here.[7]

AFFIRMED.

**6.** The district court noted that expert testimony suggested that the percentage of age-eligible blacks in the Atlanta division is probably lower than that group's share of the general population. This would of course decrease both the absolute percentage disparity with regard to appellants' constitutional challenge and the absolute impact on an average petit jury with regard to their statutory argument.

**7.** That *Hawkins* involved a challenge to grand jury composition while the present case centers on petit jury composition does not undermine *Hawkins'* authority here. We have previously utilized the same threshold standard for both grand jury and petit jury challenges in the constitutional context. *See Barksdale,* 639 F.2d at 1126–27; *see also Alexander v. Louisiana,* 405

U.S. 625, 626 n. 3, 92 S.Ct. 1221, 1223 n. 3, 31 L.Ed.2d 536 (1972) ("The principles that apply to the systematic exclusion of potential jurors on the ground of race are essentially the same for grand juries and for petit juries...."). The Jury Selection and Service Act by its terms subjects both grand jury and petit jury challenges to the "substantial failure to comply" limitation, 28 U.S.C. § 1867, and the legislative history of the Act does not suggest a congressional intent to subject petit jury procedures to a more rigorous review. *See* H.Rep. No. 1076, 90th Cong., 2d Sess., *reprinted in* 1968 U.S.Code Cong. & Ad.News 1792, 1794 ("Your committee would leave the definition of 'substantial' to the process of judicial decision.").