Mattie Lee BRYANT, Petitioner,

v.

Louie L. WAINWRIGHT, Secretary, Florida Department of Corrections, Respondent.

No. 81–5483.

United States Court of Appeals, Eleventh Circuit.

Sept. 30, 1982.

Rehearing and Rehearing En Banc Denied Nov. 3, 1982.

Green, Eisenberg & Cohen, James K. Green, West Palm Beach, Fla., for petitioner.

Stewart Bellus, Asst. Atty. Gen., West Palm Beach, Fla., for respondent.

Before FAY, JOHNSON and HENDERSON, Circuit Judges.

HENDERSON, Circuit Judge:

The appellant, Mattie Lee Bryant, is a black woman who was indicted by a Palm Beach County, Florida, grand jury for first degree murder in 1978. Prior to trial, she moved to dismiss the indictment claiming race discrimination in the selection of grand jury venires, and race and sex discrimination in the selection of grand jury forepersons, both in violation of the Equal Protection Clause of the fourteenth amendment. The motion was denied after an evidentiary hearing. She then pled *nolo contendere* to a lesser offense, but reserved the right to appeal the denial of her motion. After exhausting available state remedies, she filed this habeas corpus petition in the United States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 2254. The district court concluded that the appellant failed to establish a prima facie case of discrimination and denied the petition. For the following reasons, we affirm.

■ The three essentials for establishing a prima facie case of discrimination under the fourteenth amendment are the same whether it concerns discrimination in the selection of grand jury venires or discrimination in the selection of grand jury forepersons.[1] First, the group allegedly discriminated against must be one that is a distinct class in society. Second, the group must be substantially underrepresented in the grand jury venires, or the office of

1. Cases challenging the appointment of a grand jury foreperson are relatively new to federal courts. Three years ago the Supreme Court assumed without deciding that "discrimination with regard to the selection of only the foreman requires that a subsequent conviction be set aside, just as if the discrimination proved had tainted the selection of the entire jury venire." *Rose v. Mitchell*, 443 U.S. 545, 551 n.4, 99 S.Ct. 2993, 2997 n.4, 61 L.Ed.2d 739 (1979). The same assumption was made in *Williams v. State of Mississippi*, 608 F.2d 1021 (5th Cir. 1979). The judges of this court have now adopted that assumption as law: "If convictions must be set aside because of taint of the grand jury, we see no reason to differentiate the result because discrimination affected only the foreman." *Guice v. Fortenberry*, 661 F.2d 496, 499 (5th Cir. 1981) (en banc). For a full discussion of a defendant's rights respecting the grand jury foreperson, see *United States v. Perez-Hernandez*, 672 F.2d 1380 (11th Cir. 1982).

grand jury foreperson, over a significant period of time. Third, the defendant must show that the selection procedure is not racially neutral or is susceptible to abuse as a tool of discrimination. *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); *Rose v. Mitchell*, 443 U.S. 545, 99 S.Ct. 2993, 61 L.Ed.2d 739 (1979). It is not necessary to examine fully the first requirement of this test in this instance since blacks and women have long been recognized as distinct groups in our society. *See Hernandez v. Texas*, 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954); *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). We find, however, as did the district court, that the appellant failed to satisfy the second element of the prima facie test for either of her claims. She did not establish substantial underrepresentation of blacks in grand jury venires, or women and blacks in the office of grand jury foreperson, over a significant period of time.

■ This second requirement, also known as the "rule of exclusion," employs statistical comparisons to demonstrate underrepresentation of a particular group. "If a disparity is sufficiently large, then it is unlikely that it is due solely to chance or accident, and, in the absence of evidence to the contrary, one must conclude that racial or other class-related factors entered into the selection process." *Castaneda v. Partida*, 430 U.S. at 494 n.13, 97 S.Ct. at 1280 n.13. The "rule of exclusion" also requires that the statistical underrepresentation must have occurred over a significant period of time. This also works to eliminate chance or inadvertence as a cause of underrepresentation. *Rose v. Mitchell*, 443 U.S. at 570, 99 S.Ct. at 3007. There is not, however, a magic formula which can be applied to every factual situation in resolving the question of discrimination. Exact mathematical standards have never been developed, nor should they be. Such a mechanical approach would be too rigid for the wide variety of circumstances and unique factual patterns of discrimination cases arising un-

der the Equal Protection Clause. *See Alexander v. Louisiana*, 405 U.S. 625, 630, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972). As a result, courts have addressed each case on an individual basis.

■ Most courts, however, have adopted a single method for evaluating a defendant's statistical evidence.[2] A determination is made first of the percentage of the relevant general population composed of the particular group or class allegedly singled out for discriminatory treatment. A similar finding must then be made of the percentage of the same group or class represented in grand jury venires or the office of grand jury foreperson. Finally, the two figures are compared, and if the result reveals a significantly large disparity, then there arises a presumption of discrimination. For example, in *Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970), the evidence established that in 1968 sixty percent of Taliaferro County, Georgia, was black, although the same class represented only thirty-seven percent of the grand jury. The Court had no difficulty in concluding that a disparity of twenty-three percentage points in any given year was too large to be explained by any reason other than discrimination. *Turner v. Fouche*, 396 U.S. at 359, 90 S.Ct. at 539. Likewise, in *Whitus v. Georgia*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967), there was a significant disparity of over thirty points in the percentage of blacks in the general population of Mitchell County, Georgia, and the percentage of blacks on the county's grand and petit jury venires. In contrast, in *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965), a difference of only ten percentage points was not sufficient to establish a prima facie case of discrimination. These cases serve only as general guidelines, since, as we noted earlier, there is no magic number which can control a court's resolution. We cannot hold that any disparity over fifteen percentage points is always too great, and any

2. There are several other formulas which have been utilized by various courts at one time or another. *See generally* Kairys, *Jury Representativeness: A Mandate for Multiple Source Lists*, 65 Cal.L.Rev. 776 (1977).

disparity under twelve percentage points is always permissible. In cases where the statistical difference is arguably substantial, a court must look beyond the figures to other criteria such as the number of years involved, the size of the sampling, and the number of the class in the general population. A disparity of fifteen percentage points is much greater in a case where the class or group represents only twenty percent of the general population, than where the class or group represents seventy percent of the population. Similarly, a disparity of fifteen percentage points is much more significant if it has continued for ten years, than if it has occurred in only one isolated year. The magnitude of a disparity may also depend on whether the statistics are based on one grand jury venire of thirty people, or on dozens of grand jury venires representing thousands of people. *See Rose v. Mitchell*, 443 U.S. at 571, 99 S.Ct. at 3007.

■ The third factor of the prima facie test, establishment that the selection process is susceptible to abuse, can also affect the gravity of the disparity. A selection process which can be easily maneuvered in a discriminatory fashion is more likely to give rise to a presumption of discrimination than a selection process which would be difficult, but not impossible, to manipulate. Thus, in *Alexander v. Louisiana*, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972), the Court held that a disparity of only fourteen percentage points supported a prima facie case of discrimination, but emphasized the ease with which jury commissioners could have used their procedures for discrimination. The goal of this entire balancing process is, of course, to eliminate chance or inadvertence as a cause of the disparity; the statistical evidence must convince the court that discrimination is the only reasonable explanation.

■ In the present case, the appellant claims that blacks were systematically excluded from serving on grand juries in Palm Beach County between 1974 and 1978. The evidence, however, does not establish a prima facie case. The percentage of blacks in the general population of Palm Beach County during this period varied slightly from 14.3% in 1974 to 13.4% in 1978, for an average of 13.7%. Blacks composed an average of 6.3% of all grand jurors during this five-year time span, ranging from a high of 10.4% in 1975 to a low of 3% in 1978. Thus, the average variance for the period was only 7.4 percentage points. The largest deviation in any given year was 10.4 percentage points in 1978, and the lowest was 3.6 percentage points in 1975.[3]

These figures alone tend to dispel the appellant's contention since they are similar to the percentages held permissible in *Swain v. Alabama*. Nonetheless, our decision on this issue does not rest solely upon the numbers. If these same figures were combined with an easily manipulative selection procedure, we might reach a different conclusion. We find, however, that the selection methods employed by Palm Beach County officials for choosing grand jurors during the period under investigation was essentially neutral. In each of the five years, the secretary to the jury commission maintained an individual card file for every registered voter in the county. These cards were filed by precinct and composed the entire pool from which grand jury venires were drawn. The cards contained various information with respect to each person's address and age, but no reference to race. Once a year, a jury commissioner constituted a grand jury venire by randomly pulling a specified number of cards from each precinct depending on its size. The only cards rejected were those people who had recently served jury duty. Once selected, the cards were then given to the secretary who typed an individual's name and address onto a separate strip of paper. All these strips were then placed into a locked jury box and

---

**3.** The following chart details the exact figures:

| | % of population who are black | % of grand jurors who are black | Disparity |
|---|---|---|---|
| 1978 | 13.4 | 3.0 | 10.4 |
| 1977 | 13.4 | 7.7 | 5.7 |
| 1976 | 13.5 | 6.1 | 7.4 |
| 1975 | 14.0 | 10.4 | 3.6 |
| 1974 | 14.3 | 4.3 | 10.0 |
| Average | 13.7 | 6.3 | 7.4 |

withdrawn by a state judge only as a need arose for a grand jury. The secretary testified that she has never witnessed an irregularity with regard to this entire process. Indeed, there appears to be little opportunity for discrimination within such a system. This case bears no similarity to *Whitus v. Georgia*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967), where the letter C appeared after the name of each black on a jury source list, or to *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977), where an individual's ethnic background was usually identifiable by his surname.

■ The existing disparities in this case appear to be the result of the use of voter registration lists as a jury source pool, and not because of covert, intentionally discriminatory acts. Only eight percent of the registered voters in Palm Beach County are black, in contrast to a population of fourteen percent black. The appellant vigorously argues that the use of voter registration lists as a source for grand and petit jury venires is, in itself, a tool of discrimination in this case. We disagree. Voter registration lists commonly provide the basis for grand and petit jury lists. This practice is approved by statute in the federal system. 28 U.S.C. § 1863(b)(2). Likewise, section 40.01(1) of the Florida Statutes requires that all state jurors be fully qualified electors. We have previously upheld its constitutionality.[4] *Reed v. Wainwright*, 587 F.2d 260 (5th Cir. 1979). Accordingly, we conclude that the appellant failed to prove a prima facie case of discrimination in the selection of grand jurors in Palm Beach County.

The appellant also maintains that blacks and women were discriminatorily excluded from serving as grand jury forepersons in Palm Beach County. She originally attempted to support a prima facie case based on statistics covering the years 1973 through 1978, but during oral argument her attorney conceded that complete statistical evidence as required by *Rose v. Mitchell*, 443 U.S. at 570, 99 S.Ct. at 3007, was not gathered for 1973 and 1974. She now contends that a prima facie case of discrimination was realized from statistics covering only a three and one-half year period from 1975 through 1978. During those years, ten grand juries were impaneled in Palm Beach County, and each time the presiding judge selected a white male as foreperson.[5]

■ We have little difficulty in concluding that these statistics do not establish a prima facie case of discrimination against blacks. In a county where the population is only fourteen percent black, the statistical probability is that only one black would have been chosen as one of the ten forepersons. We cannot presume discrimination when so small an expectancy is not realized. These facts bear little similarity to *United States v. Perez-Hernandez*, 672 F.2d 1380 (11th Cir. 1982), where 50 forepersons, only one of them black, were appointed over a five-year period in a community which was sixteen percent black. In that case, eight black forepersons was the expected number, in contrast to the one black foreperson actually designated. Also, in *Guice v. Fortenberry*, 661 F.2d 496 (5th Cir. 1981) (en banc), no blacks held the office of foreperson out of thirty-one persons selected over a fifteen-year period, although the population of the county was sixty percent black. The

4. Of course, if the use of voter registration lists as the origin for jury venires were to result in a sizeable underrepresentation of a particular class or group on the jury venires, then this could constitute a violation of a defendant's "fair cross-section" rights under the sixth amendment. The statistical comparisons in this case, however, do not establish a sixth amendment violation. *See Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975); *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979).

5. A grand jury foreperson in the Florida system is selected and appointed by the presiding circuit judge from the grand jury panel after it has been installed. Fla.Stat.Ann. § 905.08 (West). The record in this case is silent as to how many judges were involved in the selection process for these years. Nor does the record disclose the duties of a grand jury foreperson in Palm Beach County, although their statutory responsibilities appear to be only ministerial and relatively unimportant. *See* Fla.Stat.Ann. §§ 905.-13, 905.15, 905.195, 905.22 (West), and Fla.R. Crim.Proc. 3.140(f).

statistical disparities in these cases were large enough to satisfy the second requirement of a prima facie case of discrimination under the fourteenth amendment. The same is not true in the appellant's case.

▬▬▬ The appellant's claim of discrimination against women in the selection of grand jury forepersons is based on more disparate statistics. The record indicates that women represented approximately fifty-four percent of Palm Beach County's adult population during the years under investigation, although ten men were successively chosen as grand jury forepersons.[6] Nevertheless, we find that the appellant still failed to present a prima facie case of discrimination. A test sample of only ten selections from a brief three and one-half year period simply is not sufficiently large to allow a meaningful statistical comparison. The sample must be large enough to convince a court that any disparity is not due to chance or inadvertence. *Rose v. Mitchell*, 443 U.S. at 571, 99 S.Ct. at 3007. *Castaneda v. Partida*, 430 U.S. at 494 n.13, 97 S.Ct. 1280 n.13. Obviously, we are faced with another line-drawing problem. No one would deny that two foreperson selections are not an adequate basis on which to compute reliable statistics necessary for a presumption of race or sex discrimination in any community. By the same token, a sample of twenty-five or thirty foreperson appointments would be sufficient in almost all cases. We refuse, though, to draw an inflexible line somewhere between two and thirty. We conclude only that ten is not enough in this case. Therefore, the appellant did not provide sufficient statistical evidence necessary to demonstrate a prima facie case of discrimination against women

in the selection of Palm Beach County grand jury forepersons.

For the above reasons, the district court did not err in denying the appellant's petition for a writ of habeas corpus.

AFFIRMED.

JOHNSON, Circuit Judge, dissenting:

I agree with the majority's holding that the appellant failed to establish a prima facie case of racial discrimination in the selection of grand jury venires. But because I am unable to agree with its conclusion that she did not establish a prima facie case of sex discrimination in the selection of grand jury forepersons, I respectfully dissent.

As the majority suggests, the appellant must establish three elements in order to make out a prima facie case of discrimination in the selection of grand jury forepersons. First, the group allegedly discriminated against must be a distinct class. Second, the appellant must "prove the degree of underrepresentation by comparing the proportion of the group in the total population to the proportion called to serve, here as foremen, over a significant period of time." *Guice v. Fortenberry*, 661 F.2d 496, 499 (5th Cir. 1981) (en banc) (citing *Castaneda v. Partida*, 430 U.S. 482, 494, 97 S.Ct. 1272, 1280, 51 L.Ed.2d 498 (1977)). This second requirement is known as the "rule of exclusion." Third, the appellant must support a presumption of discrimination "by showing that the selection procedure is susceptible to abuse or is not racially [or sexually] neutral." *Id.*[1]

In my opinion the appellant meets both the first and third requirements with little

---

**6.** The magistrate found there was no evidence of the percentage of women in the general population of Palm Beach County. Indeed, the record originally before this court did not contain such information. However, the census figures and other population studies were introduced in the state court hearing. For some yet unexplained reason, this portion of the state court record was not a part of the record on appeal, but was later transmitted to the clerk of the court by the Florida Attorney General's office. Both parties to this appeal referred to this missing material in their arguments. Since both parties assumed that their exhibits were

before the district court, we consider the evidence contained therein.

**1.** Initially, the appellant, who is a black woman, also alleged racial discrimination in the selection of forepersons. She conceded in her brief before this Court, however, that the statistics supporting this allegation do not permit an "inference as overwhelming as that in the case of discrimination in the selection of women forepersons." Because I find the appellant's claim of sex discrimination sufficient grounds to reverse, I do not discuss the racial discrimination claim.

difficulty.[2] The majority points out that "blacks and women have long been recognized as distinct groups in our society." 686 F.2d at 1376. And the law of this Circuit clearly requires us to find in this case that the appellant proved that the foreperson selection process was susceptible to abuse or was not sexually neutral. Recently this Circuit held in *United States v. Perez-Hernandez*, 672 F.2d 1380, 1387 (11th Cir. 1982) (per curiam), that when "[a] judge personally selected a foreman after a grand jury was empanelled" and when "[e]ach judge was able to determine the sex and race of the grand jury members before he made a selection," the selection procedure was "susceptible to abuse." The selection procedure in the case before us is identical to that in *Perez-Hernandez* in both these respects. As Justice White suggested in *Rose v. Mitchell*, 443 U.S. 545, 592, 99 S.Ct. 2993, 3019, 61 L.Ed.2d 739 (1979) (White, J., dissenting), when "the selection of a foreman is left to the complete discretion of a single person—the circuit judge [—t]he potentialities for abuse ... are ob-

vious." [3] *Cf. Castaneda, supra*, 430 U.S. at 497, 97 S.Ct. at 1281 (Texas "key man" system of selecting grand jurors found subjective and thus is susceptible to abuse); *Whitus v. Georgia*, 385 U.S. 545, 552, 87 S.Ct. 643, 647, 17 L.Ed.2d 599 (1967) (procedure for selection of grand jurors presented opportunity for discrimination where members were chosen from list which designated race of each person); *Guice, supra* (selection procedure of one judge, which permitted viewing of potential forepersons prior to selection, "clearly" satisfied third requirement of prima facie test).[4]

Whether the appellant meets the second requirement under the "rule of exclusion" presents a closer question. She established positively that, in ten grand juries over the three and one half year period prior to her indictment, the presiding judge in each case selected a white male as foreperson. I conclude that this evidence suggests a "degree of underrepresentation" over "a significant period of time" sufficient to make out a prima facie case of sex discrimination.

The majority finds the appellant's statistical evidence defective because "[a] test

2. The majority does not discuss the issue of whether the appellant satisfied the third requirement, presumably because it holds that she failed to make out a prima facie case under the second requirement. This Court's holding that the use of voter registration lists as a source of grand jury venires is not a "tool of discrimination," 686 F.2d at 1378, of course is not determinative of the issue as it pertains to the selection process for grand jury forepersons. In Florida the presiding judge selects a foreperson from the membership of the grand jury once it has been empanelled. Fla.Stat. Ann. § 905.08 (West 1973). Thus, even if the selection process for grand jury members is race- and sex-neutral, the issue involving the selection of forepersons requires an independent determination.

3. The opinion of the Court in *Rose* did not reach the question whether the selection procedure under review was susceptible to abuse because it found that the statistical evidence failed under the second requirement to support a prima facie case of discrimination. *See* 443 U.S. at 566, 99 S.Ct. at 3005.

4. I note that in order to find that the appellant has satisfied the third requirement, this Court need not find "a conscious, concerted plan not to select [female] foremen," as both the Magistrate below and the Florida Supreme Court

suggested. *See Bryant v. State*, 386 So.2d 237, 240 n.4 (Fla.1980). The test as stated in *Guice* requires only "a selection *process* that is *susceptible* of abuse *or* not [sexually] neutral." (emphasis added). This language requires neither a "plan" to discriminate nor "conscious" discrimination. Moreover, a finding as to the third requirement does not imply, as the government suggested in its argument, that the state must substitute its current selection procedures with random selections. The third requirement as stated in *Guice* means only what it says—if the selection process is not race- or sex-neutral or if it is *susceptible* of abuse (meaning that there may exist some opportunity for abuse), then a court will give weight to independent statistical evidence of discrimination. In other words, a finding of prima facie discrimination casts no aspersions on a particular method of selection unless corroborating statistical evidence is found. Once the statistical discrepancy disappears, the state is free to employ the selection process of its choice. In addition, the government is always free to rebut a defendant's case by presenting evidence that the criteria used by judges in selecting forepersons were race- and sex-neutral. *See United States v. Perez-Hernandez*, 672 F.2d 1380, 1387–88 (11th Cir. 1982) (per curiam).

sample of only ten selections from a brief three and one half year period simply is not sufficiently large to allow a meaningful statistical comparison." I cannot agree with this conclusion. Although it is certainly true that no "magic formula ... can be applied to every factual situation in resolving the question of discrimination," 686 F.2d at 1376, the statistical evidence before us compares favorably to evidence that was found sufficient in other cases to establish a prima facie case. If the probability in this case of selecting a female foreperson in any one grand jury is 50%, the probability of selecting zero female forepersons out of ten grand juries is more than one thousand to one.[5] *Cf. United States v. Manbeck*, 514 F.Supp. 141, 149 (D.S.C.1981) (defendant established prima facie case of discrimination where court had selected three women after eighteen selections; probability found by court to be 292 to 1). Moreover, the absolute disparity between the percentage of women chosen as forepersons (0%) and the percentage of women in the total population (say 50%) is 50%. This is far greater than the disparities that the Supreme Court has held sufficient to establish a prima facie case of discrimination. *See, e.g., Turner v. Fouche*, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970) (23% disparity); *Carter v. Jury Commission*, 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970) (33% disparity); *Jones v. Georgia*, 389 U.S. 24, 88 S.Ct. 4, 19 L.Ed.2d 25 (1967) (25.7% disparity); *Whitus v. Georgia*, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967) (33.5% disparity). In

*Perez-Hernandez, supra*, 672 F.2d at 1387, this Circuit found that when five out of fifty forepersons—ten percent—were women, the "disparity [approximately 40%] clearly satisfies the second part of the prima facie test." *See also United States v. Breland*, 522 F.Supp. 468, 479 (N.D.Ga.1981) (a "47.1% absolute disparity between the percentage of female foreperson [sic] and females in the district's jury-eligible population is ... clearly sufficient to establish a prima facie case of gender discrimination in the selection of forepersons").

Perhaps the most telling aspect of the evidence in this case, however, does not involve probabilities or absolute disparities. Many of the courts that have held that a prima facie case was established had before them evidence that at least some of the members of the group allegedly discriminated against had in fact been selected. In our case, however, not a single woman was selected. As the former Fifth Circuit said recently, "statistics are not, of course, the whole answer, but nothing is as emphatic as zero...." *Guice, supra*, 661 F.2d at 505 (quoting *United States v. Hinds County School Board*, 417 F.2d 852, 858 (5th Cir. 1969)).[6]

In part for these reasons, I conclude that evidence from ten grand juries is a large enough sample to make it "unlikely that [the disparity] is due solely to chance." *Castaneda, supra*, 430 U.S. at 494 n.13, 97 S.Ct. at 1280 n.13. *Cf. United States v. Holman*, 510 F.Supp. 1175, 1179 (N.D.Fla. 1981) (evidence as to selection of foreper-

---

**5.** If the grand jury is composed of 50% women, the probability of not selecting a woman out of ten grand juries is one in $2/10$, or $1/1,064$.

Actually, statistical calculations based on the assumption that women constitute 50% of the population or that 50% of the grand jury members are women significantly understates the underrepresentation of women as forepersons in the case before us. The appellant's statistics for Palm Beach County indicate that women represented approximately 54% of the population during the years in question. Second Supplemental Record at 87. Moreover, an examination of the first names of the members of the ten grand juries in question reveals that of 180 total grand jury members (18 members per grand jury), 99 were women and only 81 were men. Second Supplemental Record at 48–59.

**6.** The majority also implies that whatever harm may have been caused by the underrepresentation of women is undercut by the fact that the duties of a foreperson "appear to be only ministerial and relatively unimportant." 686 F.2d at 1378 n.5. This is not the place to go into a discussion of whether the foreperson, by virtue of his or her position and the fact that he or she was selected by the presiding judge, holds unique persuasive powers over his or her peers. I note only that this Circuit recently rejected an argument that attacks on the selection of forepersons should not be permitted because the position of grand jury foreperson is "constitutionally insignificant." *Perez-Hernandez, supra*, 672 F.2d at 1386.

sons from eleven grand juries is large enough statistical sample for prima facie case). The numbers in the grand jury membership cases of course are larger, as the majority suggests. But the fact that only two to three forepersons are selected each year requires that a court be somewhat more lenient with statistical requirements.[7] This is particularly warranted in this case, in which we are faced with an easily manipulated selection process. In any event, holding, as I would, that a defendant may sometimes establish a prima facie case of discrimination on the basis of evidence from ten grand juries does not prevent the government from arguing that the quantum of evidence required to rebut such a case should be less than that required when a defendant relies on statistics from 25–30 grand juries.

Once a prima facie case is established, the burden of proof shifts to the government. *Guice, supra,* 661 F.2d at 600. The record in this case reflects the fact that the trial court reserved ruling as to whether the appellant established a prima facie case, and the government proceeded to call its own witnesses in rebuttal. Record at 12. Counsel for both parties confirmed this during oral argument. Apparently, then, the government was given the opportunity to present evidence such as that found sufficient to rebut the defendant's case in *Perez-Hernandez, supra.* But the government failed to call any judges or other witnesses who could testify as to the criteria for selection of grand jury forepersons.[8] Accordingly, I would find that the government failed to rebut the appellant's prima facie case.

I would reverse the order of the district court and grant the writ.

---

7. Also relevant should be whether there is evidence that a female foreperson was selected at any time prior to the period immediately under review. In the case before us, the government offered no evidence that a woman foreperson has ever been selected in Palm Beach County.

8. The witnesses called by the government testified as to the selection process for the grand jury venires, but not the criteria for selection of forepersons.