**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Anthony BECK, Defendant-Appellant.**

**No. 82–8483.**

United States Court of Appeals,
Eleventh Circuit.

April 16, 1984.

---

Michael K. McIntyre, Federal Defender Program, Inc. (court-appointed), Atlanta, Ga., for defendant-appellant.

Richard H. Dean, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before VANCE and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

Two issues raised by appellant Anthony Beck were consolidated with other appeals, and therefore are treated in the opinions for those appeals. Beck's grand jury foreperson discrimination challenge is addressed in our opinion in *United States v. Sneed,* 729 F.2d 1333, and his petit jury composition challenge is addressed in our opinion in *United States v. Tuttle,* 729 F.2d 1325. We decide the remaining issues herein.

## I. BACKGROUND

A jury convicted Beck on four counts of bank robbery on July 8, 1982, and the district court sentenced him to 20 years in prison, followed by a five year probation term. An earlier trial had resulted in a mistrial when the jury failed to reach a verdict.

Beck was charged with the robbery of a C & S bank in College Park, Georgia, on August 17, 1981, and of the Bank of the South in College Park, on September 1, 1981. The police first suspected Beck after an informant "fingered" him in the robberies. FBI special agent Bob Leary followed-up the tip by corroborating Beck's address and a description of his car provided by the informant. Leary also obtained Beck's identification photograph from Atlanta police, compared it with surveillance photographs from the second robbery, and concluded that Beck was one of the robbers.

On September 10, 1981 at approximately 7:30 a.m., some 15 FBI agents and local policemen, acting on a state arrest warrant, approached Beck's apartment. When no one responded to their knock, the officers kicked in the door and searched the apartment for Beck. Although they did not find Beck, they did seize a gun lying in plain view, and a pair of running shoes sitting on the floor in a closet. Agent Leary seized the shoes because they resembled shoes that he had noticed one of the robbers was wearing in a surveillance photograph taken during one of the robberies. After their search, the officers left a note on Beck's door to call the College Park police station when he got home. Beck called that same evening and agreed to meet with a detective, at which time he was arrested.

Beck raises four issues that we must decide here. First, he contends that his Speedy Trial Act rights were violated. Second, he argues that the running shoes

found in his apartment should have been suppressed as fruits of an illegal search. Third, he argues that the trial court erred in excluding the results of a polygraph test, which were favorable to defendant. Finally, Beck asserts that the trial court erred in admitting an incriminating statement he made. Finding no merit in these contentions, we affirm the conviction.

## II. DISCUSSION

### A. Were Beck's Speedy Trial Rights Violated?

■ Beck asserts that his right to a speedy trial, as set forth in 18 U.S.C. § 3161, was violated in this case because he was not tried within the statutory time limit of 70 days.[1] Beck contends that, even giving the government the benefit of a doubt, 91 days of nonexcludable time elapsed between the date he was arraigned and the date of trial. The government, however, claims that when it gives Beck the benefit of a doubt, only 58 days of nonexcludable time elapsed.

Our independent calculation of the non-excludable time elapsed from indictment to trial agrees with that of the government. Beck apparently failed to exclude several days during which government pretrial motions were pending. *See* 18 U.S.C. § 3161(h)(1)(F). Therefore Beck was tried within the time limitations of the Act.

### B. Should Beck's Running Shoes Have Been Suppressed?

■ Beck argues that the government's seizure of his running shoes was illegal for a variety of reasons. He contends that, 1) the arrest warrant relied upon by the police to enter his apartment was not supported by probable cause, 2) the actions of the police do not fall within

the good faith exception to the exclusionary rule, 3) the police had no reason to believe Beck was in his apartment at the time of the raid, and 4) the officers exceeded the limited authority of the arrest warrant once inside Beck's apartment.

The magistrate who ruled on Beck's motion to suppress found that the arrest warrant was not supported by probable cause, but that the search fell within the good faith exception to the exclusionary rule. Although the affidavit supporting the warrant was deficient, the FBI officers investigating Beck had personal knowledge among themselves sufficient to satisfy the requirements of probable cause. Thus, the officers had a reasonable and good faith, although possibly mistaken, belief that their actions were authorized, and the good faith exception therefore applies. *See United States v. Williams,* 622 F.2d 830 (5th Cir.1980) (en banc),[2] *cert. denied,* 449 U.S. 1127, 101 S.Ct. 946, 67 L.Ed.2d 114 (1981).

Beck asserts that even if the arrest warrant is held to be saved by the good faith exception, the officers had no reason to believe that he was in his apartment, and therefore used the arrest warrant as a pretext for a general search. Beck's claim relies on isolated statements by agent Leary that there were no outward appearing "signs of life" in Beck's apartment the evening before the search (at which time Leary observed the apartment), and that the apartment appeared the same way the next morning. Nevertheless, the officers could reasonably believe that Beck was at home at the time of their raid: the agents did not monitor Beck's apartment continuously, so they were not aware of his comings and goings; Beck's car, identified by the agents, was parked nearby;[3] and it

---

1. The Speedy Trial Act contains elaborate provisions for determining when the 70 day limit begins to run as well as providing for various exclusions of time.

2. We are bound by this Fifth Circuit precedent. *See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981) (en banc).

3. Beck argues that because his car was parked in the same spot the night before when the agents observed "no signs of life" in his apartment, the agents should have concluded Beck was still away the next morning. The presence of his car could have indicated, however, that Beck was nearby—perhaps visiting a neighbor, or at a store, bar or restaurant within walking distance of his apartment.

was reasonable to believe that one would be at home at 7:30 a.m. and be sound asleep, in which case his apartment would not exhibit any outward "signs of life." The fact that no one responded to Leary's knock and announcement did not mean that no one was home since it was reasonable to expect a fugitive to hide or flee if possible. Thus, the entry to search for Beck was reasonable.

■ Finally, Beck claims that it was unreasonable for the officers to look inside a closet for running shoes when they were armed with an arrest warrant that gave them only the limited authority to search for Beck himself. Of course, Beck could hide in a closet, therefore it was reasonable to look for him there. Once the officers looked in the closet, the running shoes came within their view and therefore were seized properly.

### C. *Was it Error to Exclude the Results of the Polygraph Test?*

On his own initiative, Beck was examined by a qualified polygraph examiner who concluded that Beck was being truthful when he denied knowledge of any participation in either of the bank robberies. As Beck readily concedes, this circuit has unequivocally refused to admit the results of polygraph examinations. *United States v. Clark*, 598 F.2d 994 (5th Cir.1979), *cert. denied*, 449 U.S. 1128, 101 S.Ct. 949, 67 L.Ed.2d 116 (1981). Nevertheless, Beck suggests that in *Henry v. Dees*, 658 F.2d 406 (5th Cir.1981), the court implied that a polygraph examination would be admissible if both parties stipulated to its admission. Here, however, the government refused to stipulate to the admission of Beck's polygraph results, or to agree to admission of a new, independent polygraph test that the government could observe.

Beck contends that under *McMorris v. Israel*, 643 F.2d 458 (7th Cir.1981), *cert. denied*, 455 U.S. 967, 102 S.Ct. 1479, 71 L.Ed.2d 684 (1982), the government's refusal to stipulate to admission of his polygraph results denied him his right to due process. The *McMorris* case, however, is readily distinguishable from the case at hand. In *McMorris* the defendant was tried in a Wisconsin state court in which polygraph examinations were admissible, under certain carefully prescribed circumstances, when the parties stipulate to the examination's admissibility. *Id.* at 459–60. Although the case met the other requirements for use of polygraph results in Wisconsin, the prosecutor refused, without giving any explanation, to stipulate to a polygraph test. *Id.* at 460. The court held that a blanket and unexplained refusal by a prosecutor to stipulate to admission of polygraph results in a state where the results otherwise would be admissible violated a criminal defendant's due process rights. *Id.* at 466.

■ Here, however, the court has not yet stated its willingness to admit even stipulated polygraph results. Additionally, in *McMorris* the defendant apparently did not actually take a polygraph test, because the prosecutor's refusal to stipulate to its admission would have made taking the test a futile exercise. Here, Beck arranged a polygraph test on his own, and only after he received favorable results did he seek to have the prosecutor stipulate to admission of the test. If a defendant intends to seek admission of polygraph results he should seek a stipulation *before* any test is administered, so that the stakes are even for both sides. Obviously, it would be unfair to allow the defendant to test the waters before he sought a stipulation, and require the prosecutor to so stipulate when the defendant had favorable results, yet allow the defendant to refuse such a stipulation when the results were unfavorable. Therefore, the district court was correct in excluding the results of defendant's polygraph test.

### D. *Did the Trial Court Erroneously Admit an Incriminating Statement Made by Beck?*

■ Beck asserts that his confession, made during one of several interrogations, should not have been admitted at trial either 1) because it was not voluntarily

made, or 2) because it was the fruit of an illegal arrest. Regarding the first contention, we hold that the district court's finding that Beck's confession was voluntary was not "clearly erroneous." The second contention rests on the premise that the arrest warrant issued for Beck was defective. As stated earlier, that warrant, even if defective, comes within the good faith exception to the exclusionary rule. Moreover, in this case Beck was not arrested pursuant to the defective warrant. Rather, he was arrested when he voluntarily came to the College Park police station after the police officers left a note on his apartment door. When Beck arrived at the police station the officers had probable cause for his arrest and did not need a warrant.

AFFIRMED.