**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Lucian Lamar SNEED,**
**Defendant-Appellant.**

**No. 82–8565.**

United States Court of Appeals,
Eleventh Circuit.

April 16, 1984.

John R. Martin, Atlanta, Ga., for defendant-appellant.

Janet F. King, Asst. U.S. Atty., Southeastern Drug Task Force, Atlanta, Ga., for plaintiff-appellee.

Before VANCE and JOHNSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

TUTTLE, Senior Circuit Judge:

This case is the latest in a series in this Court challenging criminal convictions based on alleged discrimination in the selection of grand jury forepersons. Defendant Sneed was indicted by a grand jury empan-eled by Judge Robert L. Vining on sixteen counts of embezzlement, mail fraud, and removal of property to prevent seizure, in violation of 18 U.S.C. §§ 656, 1341, and 2232. Sneed filed a timely motion to dismiss the indictment, alleging racial and sexual discrimination in the selection of grand jury forepersons in the northern district of Georgia. After the motion was denied, defendant was convicted on all sixteen counts, and this appeal followed. We affirm.

◼◼◼ We begin our discussion by setting forth some basic principles germane to this case. The Supreme Court and this Circuit have recognized that a criminal defendant may attack a conviction on the grounds of purposeful discrimination against an identifiable group in the compilation of the grand jury list from which the grand jury indicting the defendant was drawn. *See, e.g., Castaneda v. Partida,* 430 U.S. 482, 492–93, 97 S.Ct. 1272, 1278–79, 51 L.Ed.2d 498 (1977); *United States ex rel. Barksdale v. Blackburn,* 639 F.2d 1115, 1121–22 (5th Cir.) (en banc), *cert. denied,* 454 U.S. 1056, 102 S.Ct. 603, 70 L.Ed.2d 593 (1981).[1] That the defendant is not a member of the underrepresented group does not deprive him of standing to raise the constitutional claim. *United States v. Holman,* 680 F.2d 1340, 1355–56 (11th Cir.1982); *United States v. Perez-Hernandez,* 672 F.2d 1380, 1385–86 (11th Cir.1982) (per curiam). Because "[t]he exclusion of Negroes, or any group otherwise qualified to serve, impairs the confidence of the public in the administration of justice" and "thus strikes at the fundamental values of our judicial system and our society as a whole," *Rose v. Mitchell,* 443 U.S. 545, 556, 99 S.Ct. 2993, 3000, 61 L.Ed.2d 739 (1979), the defendant need not show that he or she was prejudiced by the discrimination. *Id.; Guice v. Fortenberry,* 661 F.2d 496, 498–99 & 498 n. 2 (5th Cir.1981) (en banc). The remedy for an equal protection

---

**1.** State defendants' rights are protected under the equal protection clause of the fourteenth amendment, while federal defendants' rights are protected under the equal protection prong of the fifth amendment's due process clause, but the same analysis governs under either guarantee. *United States v. Perez-Hernandez,* 672 F.2d 1380, 1385 (11th Cir.1982).

violation with respect to grand jury selection is to set aside the conviction and quash the indictment. *Rose v. Mitchell,* 443 U.S. at 551, 99 S.Ct. at 2997.

■ The same principles have been applied to equal protection challenges to the selection of grand jury forepersons.[2] The Supreme Court in *Rose v. Mitchell* assumed without deciding that "discrimination with regard to the selection of only the foreman requires that a subsequent conviction be set aside, just as if the discrimination proved had tainted the selection of the entire grand jury venire." 443 U.S. at 551 n. 4, 99 S.Ct. at 2998 n. 4. The Fifth Circuit, sitting en banc, adopted that proposition in *Guice,* stating that "[i]f convictions must be set aside because of taint of the grand jury, we see no reason to differentiate the result because discrimination affected only the foreman." 661 F.2d at 499.[3]

In considering a challenge to the selection of state grand jury foreperson in *Rose v. Mitchell,* the Supreme Court utilized the prima facie case construct espoused in *Castaneda v. Partida,* 430 U.S. at 494, 97 S.Ct. at 1280. Under that test:

The first step is to establish that the group is one that is a recognizable, distinct class, singled out for different treatment under the laws, as written or as applied.... Next, the degree of underrepresentation must be proved, by comparing the proportion of the group in the total population to the proportion called to serve as [foreperson], over a significant period of time.... This method of proof, sometimes called the "rule of exclusion," has been held to be

available as a method of proving discrimination in jury selection against a delineated class.... Finally ... a selection procedure that is susceptible of abuse or is not racially neutral supports the presumption of discrimination raised by the statistical showing.

*Rose v. Mitchell,* 443 U.S. at 565, 99 S.Ct. at 3005 (quoting *Castaneda v. Partida,* 430 U.S. at 494, 97 S.Ct. at 1280).

The parties in this case acknowledge that blacks and women constitute distinct, recognizable classes. *Gibson v. Zant,* 705 F.2d 1543, 1547 (11th Cir.1983). Since each empaneling judge in the northern district of Georgia made grand jury foreperson decisions after having had access to juror qualification questionnaires indicating the race and sex of each grand juror, we may also conclude that the selection procedure was susceptible to abuse. *Perez-Hernandez,* 672 F.2d at 1387. We therefore focus our attention on the critical second prong of defendant's prima facie case—the degree of underrepresentation shown.

By agreement of the parties below, defendant adopted the record in the district court cases of *United States v. Smith,* Cr. No. 78–99A (N.D.Ga.1981); *United States v. Breland,* 522 F.Supp. 468 (N.D.Ga.1981); and *United States v. Northside Realty Associates,* 510 F.Supp. 668 (N.D.Ga.1981). Defendant relies on these cases to establish the degree and length of underrepresentation necessary to satisfy the second prong of his prima facie case. Each of these cases presented a fifth amendment challenge to the selection of grand jury forepersons in the northern district of Georgia. The district court in *Northside Realty*

---

2. Although the composition of a grand jury or petit jury venire may be challenged under the sixth amendment's guarantee of a right to be tried by a group drawn from a source representing a fair cross-section of the community, *see, e.g., Machetti v. Linahan,* 679 F.2d 236, 239 (11th Cir.1982), this requirement does not extend to the office of grand jury foreperson because "[o]ne person alone cannot represent the divergent views, experience, and ideas of the distinct groups which form a community." *Perez-Hernandez,* 672 F.2d at 1385.

3. The government has devoted much of its brief to portraying the office of federal, as opposed to state, grand jury foreperson as a position without constitutional significance, thereby rendering the selection of such forepersons impervious to a fifth amendment equal protection attack. The simple fact is that this court has squarely held the position of federal grand jury foreperson to be constitutionally significant. *United States v. Cross,* 708 F.2d 631, 636–37 (11th Cir. 1983). *But see United States v. Hobby,* 702 F.2d 466 (4th Cir.), *cert. granted,* —— U.S. ——, 104 S.Ct. 547, 78 L.Ed.2d 722 (1983).

made findings of fact concerning grand juries empaneled from January 1970 through February 1980, and the two later cases supplemented these findings with information regarding subsequently empaneled grand juries.

In light of our disposition of this appeal, we may accept as true defendant's characterization of the combined record in these cases.[4] From January 1970 to July 28, 1981, when the grand jury indicting defendant was empaneled, forty-eight grand jury forepersons were selected by judges in the northern district of Georgia. All but two of these forepersons were white, and all but two were male. Thus, 4.2% of the forepersons selected in the eleven and one-half years ending with the empanelment of defendant's grand jury were black, and a like percentage were female. Given age-eligible population figures of 19.1% for blacks and 51.2% for females, the absolute disparity between each group's presence in the northern district of Georgia and its presence as grand jury foreperson is 14.9% and 47.0%, respectively.

Defendant argues that, based on these disparities and Eleventh Circuit precedent, he has established the underrepresentation element of the *Mitchell-Castaneda* test. See *Perez-Hernandez,* 672 F.2d at 1387 (considering fifty foreperson selections over a four year period and concluding that an absolute disparity of 14.6% "clearly satisfies the second part of the prima facie test.") The government, however, argues that we should only look at the foreperson appointments of the particular judge who empaneled the grand jury being challenged. In other words, the government would have us look only at the foreperson appointments of Judge Vining, who empaneled the grand jury that indicted the defendant in this case, rather than the appointments of all the judges in the northern district of Georgia. The government then takes its argument one step further and contends that because Judge Vining had made only two foreperson selections at the time defendant was indicted, defendant cannot make out a prima facie case of discrimination, since no statistical inference may be made from a mere two appointments.

We reject the government's argument for two reasons. First, the government's position is simply contrary to what we believe is clear precedent in this Circuit. In *Perez-Hernandez* the court held that statistics covering fifty grand jury foreperson selections made over a four year period *by all of the judges* in the southern district of Florida were sufficient to make out a prima facie case of discrimination. 672 F.2d at 1386–87. The *Perez-Hernandez* court did not then proceed to look at the selections of any one particular judge in the southern district of Florida. Rather, the court proceeded to determine whether the government rebutted the prima facie case by "showing that racially [and sexually] neutral selection procedures have produced the disparity." 672 F.2d at 1387. The court upheld the district court's conclusion that the prima facie case had been rebutted. *See also United States v. Holman,* 680 F.2d 1340, 1355–57 (11th Cir.1982), *aff'g* 510 F.Supp. 1175 (N.D.Fla.1981); *United States v. Cabrera-Sarmiento,* 533 F.Supp. 799 (S.D.Fla.1982) (Hatchett, Circuit J., sitting by designation); *United States v. Breland,* 522 F.Supp. 468 (N.D.Ga.1981); *United States v. Jenison,* 485 F.Supp. 655 (S.D. Fla.1979).

Second, to the extent that this case can be distinguished from the holding in *Perez-Hernandez* and other cases in this Circuit, we believe that the government's position would effectively emasculate the *Mitchell-Castaneda* test and make it nearly

---

4. Defendant, unlike the *Breland* court, excludes from his calculation of minority forepersons a black male initially selected as deputy foreperson but carrying out the duties of foreperson on agreement with the original foreperson and with the district court's approval. 522 F.Supp. at 470 & n. 4. Defendant apparently also excludes an extra foreperson selection necessitated when the first foreperson died and the deputy declined to assume the office of foreperson. *Id.* at 469 n. 2. For population percentages the *Breland* court employed 1970 census age-eligible figures, "adjusted by 1978 Georgia estimates and recognized undercount percentages." *Id.* at 470.

impossible for a federal defendant to make out a prima facie case of foreperson selection discrimination no matter how egregious the statistics might be. Under the government's proposed analysis, if a particular judge has made so few foreperson appointments that a statistical analysis would be "unreliable," the court would simply dismiss the challenge for failure to make out a prima facie case.[5] Thus, only a judge who had been sitting for many years and who had selected many forepersons would ever be subject to a claim of discrimination. In effect, a trial judge could discriminate with impunity the first eight or nine times he or she selected a foreperson. Common sense tells us that only in rare cases would a criminal defendant be able to make out even a prima facie case of foreperson discrimination.

■ Thus, we hold that defendant made out a prima facie case of foreperson discrimination. But that does not end our inquiry—the prima facie case is only the starting point. Once a defendant makes out a prima facie case, the government has an opportunity to rebut the inference of discrimination. The record in this case is based largely on that compiled in *United States v. Breland*, 522 F.Supp. 468 (N.D. Ga.1981). In *Breland*, Judge Keady, sitting by designation so the court would have an impartial judge from outside the district, held that the government rebutted the prima facie case of discrimination. In particular, Judge Keady found that each judge of the northern district of Georgia exercised independent and sound discretion "in determining those qualities desirable for forepersons," *id.* at 480, and that the predominant selection criteria used by the judges—occupation, education, and age—

not only were neutral and objective, but clearly were relevant to the tasks performed by grand jury forepersons. Finally, Judge Keady found that the standards had been applied faithfully. *Id.* Those findings are supported by the record and therefore are not clearly erroneous. Moreover, none of the additional evidence and arguments introduced in this appeal are sufficient to change the conclusion reached in *Breland.* Therefore, we hold that the government successfully rebutted defendant's prima facie case.

■ The only other issue Sneed raises in this appeal is whether the district court erred in denying Sneed's motion for discovery of certain grand jury minutes. We find no error in the district court's ruling.

AFFIRMED.

VANCE, Circuit Judge, concurring in the result:

Assuming that defendant established a prima facie case of race and sex discrimination in the selection of the foreperson of the grand jury that indicted him, I agree with the majority that the government rebutted the inference of discrimination. I would hold, however, that no prima facie case was shown.

The majority stresses what it perceives as the practical effect of the government's position, but in so doing it overlooks the logical fallacy of its own. We have stated that "[d]efendants ... may challenge only improprieties affecting the *particular* grand jury which indicted them." *United States v. Bearden*, 659 F.2d 590, 601 (5th Cir. Unit B 1981) (emphasis in original), *cert. denied sub nom. Northside Realty Associates v. United States*, 456 U.S. 936,

---

**5.** A hypothetical demonstrates the Catch-22 nature of the government's argument. Suppose a district court consists of 10 judges, each of whom has appointed a total of three grand jury forepersons over a 10 year period. Suppose also that of the 30 grand juries convened over the 10 year period, not a one contained a black or female foreperson, and that the district had a large black population and a normal (approximately 50%) female population. Looking at the overall performance of the district, it would be easy to infer from such bleak statistics that a case of discrimination had been made out. But under the government's argument, the focus would be on one judge, who had made only three selections. It would, of course, be difficult to infer discrimination from only three selections. Thus, a district court with several judges could insulate itself completely from grand jury foreperson selection discrimination claims simply by spreading the relatively few selections evenly among the judges.

102 S.Ct. 1993, 72 L.Ed.2d 456 (1982). Thus, to obtain relief from his conviction through an equal protection challenge to the selection of grand jury forepersons, a defendant must prove that unconstitutional discrimination affected the appointment of the foreperson serving on the grand jury that indicted him. *See Rose v. Mitchell,* 443 U.S. 545, 551, 99 S.Ct. 2993, 2997, 61 L.Ed.2d 739 (1979). Statistical analysis is simply a means of shouldering this burden, and the statistics employed must be tailored to that end. When the judges in a given unit do not select forepersons independently on the basis of individually established criteria, the decisions of all the group's members may fairly be considered together because there is nothing to distinguish the selection process of one from that of any other: the judges' decisions are, in essence, fungible. On the other hand, when a single judge makes foreperson appointments completely isolated from his colleagues and on the basis of separately developed criteria, the selections of other judges are simply irrelevant to the defendant's claim of discrimination. In the latter situation there is no connection between the decisions of the one and the decisions of the others that can serve as a basis for viewing the entity allegedly discriminating against the defendant as the group rather than the individual. No one would seriously contend that the selection patterns of the judges in the southern district of California are, without more, relevant in determining whether discrimination colored this particular foreperson selection in the northern district of Georgia. I can perceive no difference between that situation and the present one other than the fortuity of geographical proximity, and I cannot ascribe to that difference the stature of a principled distinction. I would hold that when a judge appoints grand jury forepersons independently of his colleagues, a defendant who challenges his conviction on the grounds of unconstitutional discrimination in the selection of the foreperson of the grand jury that indicted him must demonstrate a pattern of discrimination by the empaneling judge.[1]

The majority maintains that the issue has been decided in favor of a broader focus by prior decisions of this circuit. It is apparent, however, that although these and other cases have utilized figures representing the selections of several judges, until now the issue has never been squarely decided by any binding authority.

In its only opinion confronting the grand jury foreperson issue, the Supreme Court concluded that the evidence was insufficient to establish a prima facie case, and it therefore did not need to decide when, if ever, the proper statistical focus is on the individual judge. The petitioners in *Rose v. Mitchell* introduced evidence on the race of grand jury forepersons in Tipton County, Tennessee for only scattered years from 1951 to 1973. The state judge who had empaneled the grand jury that indicted the petitioners in November 1972 had served from 1966 until the time of the state hearing in 1973. 443 U.S. at 568, 99 S.Ct. at 3006. The petitioners' prima facie showing rested on the testimony of three Tipton County forepersons who had served, respectively, in the early 1950's and occasionally thereafter; for five or six years beginning in 1961 or 1963 and occasionally thereafter; and from 1971 to 1973. The Supreme Court assumed without deciding that the relevant time period was 1951 to 1973 and held that the petitioners had not established a prima facie case for three reasons. First, the petitioners offered no evidence at all concerning many of these years. Second, the witnesses testified simply that they personally did not know of any black forepersons, without demonstrating that they would necessarily have known had there been any. Third, the petitioners failed to prove the number of

---

1. Since the relevant universe consists solely of the appointing judge's decisions only when that judge utilizes an independent selection process, the majority's prediction that adoption of the government's position would "make it nearly impossible for a federal defendant to make out a prima facie case of foreperson selection discrimination no matter how egregious the statistics might be" is unnecessarily bleak.

forepersons selected during the period, without which evidence it could not be assumed that even a total lack of black forepersons would satisfy the substantial underrepresentation requirement. *Id.* at 570–72, 99 S.Ct. at 3007–08. Each of these deficiencies applied as well to the period from 1966 to 1973.[2] Since "complete statistical evidence," *Bryant v. Wainwright*, 686 F.2d 1373, 1378 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2096, 77 L.Ed.2d 305 (1983), was lacking both for 1951 to 1973 and for 1966 to 1973, the defendants' prima facie case failed whichever period was viewed. The Court's use of the longer period thus does not suggest that the Court intended to reject as the proper object of scrutiny the selections of a single judge acting independently.[3]

Nor has any eleventh or former fifth circuit case definitively resolved this issue.[4] In *United States v. Perez-Hernandez,* 672 F.2d 1380 (11th Cir.1982) (per curiam), the eleventh circuit did not hold that the foreperson decisions of all the federal judges in the district must be examined in determining if a prima facie case of discrimination has been established. The court did not even address the issue of the relevant universe, nor did it need to do so in order to reach its result. The court merely recited the trial court's figures and proceeded to hold that the prima facie case was rebutted. *Id.* at 1387–88.

2. The appointing judge in Tipton County during that period apparently selected forepersons for a five county area, *see id.* at 568, 99 S.Ct. at 3006, but no evidence was presented concerning any past forepersons in the other four counties.

3. Defendant argues that because in several cases involving equal protection challenges to grand jury selections the Supreme Court has looked to the acts of several jury commissioners and judges, we are bound to do likewise. *See Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977); *Eubanks v. Louisiana,* 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991 (1958); *Hernandez v. Texas,* 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed.2d 866 (1954); *Smith v. Texas,* 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84 (1940); *Norris v. Alabama,* 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074 (1935). In none of the cited cases, however, is there any indication that the persons whose decisions were scrutinized acted independently pursuant to independently distilled criteria.

4. In *Bryant v. Wainwright* the majority ruled that the petitioners failed to establish a prima facie case of race or sex discrimination in the appointment of Palm Beach County, Florida forepersons because under the facts the ten selections presented in evidence did not constitute a sufficiently large sample. 686 F.2d at 1378–79. As with *Rose v. Mitchell,* this deficiency could not have been cured by looking only to one judge's selections, and thus the court did not tacitly reject the latter approach.

Defendant heralds as his "most direct authority" *Ciudadanos Unidos de San Juan v. Hidalgo County Grand Jury Comm'rs,* 622 F.2d 807 (5th Cir.1980), *cert. denied,* 450 U.S. 964, 101 S.Ct. 1479, 67 L.Ed.2d 613 (1981). The plaintiffs in *Ciudadanos Unidos* alleged that they had been discriminatorily excluded from consideration for grand jury service because of their membership in certain classes of persons, and they sought injunctive and declaratory relief. *Id.* at 812. *See generally Carter v. Jury Comm'n,* 396 U.S. 320, 329–30, 90 S.Ct. 518, 523–24, 24 L.Ed.2d 549 (1970) (finding no jurisdictional or procedural bar to such an attack). The defendants contended that no live case or controversy existed because each set of commissioners compiled only one grand jury list and because no members of one list automatically carried over to the next. 622 F.2d at 819–21. The court acknowledged that "[e]ach compilation of a grand jury list is concededly a discrete act," *id.* at 820, yet determined that a case or controversy existed because the plaintiffs had alleged a pattern of discrimination by earlier jury commissioners and that the current commissioners would continue the pattern. *See id.* at 820–22.

In contending that under *Ciudadanos Unidos* we must view cumulatively all foreperson selections in the northern district of Georgia, defendant has failed to appreciate the significance of the postural differences between that case and the present one. Petitioner here is a criminal defendant seeking relief from an alleged discrete past act of discrimination—that which occurred in selecting the foreperson of the grand jury that indicted him. The petitioners in *Ciudadanos Unidos,* on the other hand, were plaintiffs challenging a series of allegedly discriminatory acts, both past ones and threatened future ones. In *Ciudadanos Unidos* any discrimination by any set of jury commissioners, though acting independently, constituted discrimination against the plaintiffs. Because here Judge Vining selected his forepersons independently, any possible discrimination by other judges in the northern district of Georgia was neither discrimination against defendant nor relevant to showing discrimination against defendant by Judge Vining.

## 1340

*United States v. Holman*, 680 F.2d 1340 (11th Cir.1982), was decided subsequently to *Perez-Hernandez* and cited that decision in its discussion of the grand jury foreperson issue. In considering the relevant appointments, the *Holman* court noted that defendants' grand jury was the first empaneled by Judge Lynn C. Higby and that no evidence was presented that he had discussed the selection process with other judges in the district. With these observations the court expressly reserved the "serious question ... as to whether statistics dealing with selections by other judges during the past ten years indeed prove anything at all with regard to the instant appointment by Judge Higby." *Id.* at 1357 n. 13. The court simply assumed that a prima facie case was shown and based its holding on its conclusion that any prima facie case was rebutted. *Id.* at 1357.

The former fifth circuit's en banc opinion in *Guice v. Fortenberry*, 661 F.2d 496 (5th Cir.1981) (en banc), lends support to the government's position. Although there were two judges sitting in Madison Parish, Louisiana when the petitioners' grand jury was empaneled, *see id.* at 502, the court considered only the past foreperson selections of Judge Adams, who empaneled the grand jury that indicted the petitioners. *See id.* at 502, 503–05; *id.* at 509 (Reavley, J., dissenting).[5] The court described the judge's fifteen year tenure as "the relevant period" for evaluating the defendants' prima facie case, *id.* at 503–04, and it did not consider earlier appointments by other judges.

The uncontradicted evidence in this case was that Judge Vining did not discuss his foreperson selections with any other district judge. The grand jury that indicted defendant was the second empaneled by Judge Vining. Because "two foreperson selections are not an adequate basis on which to compute reliable statistics necessary for a presumption of race or sex discrimination," *Bryant*, 686 F.2d at 1379, I

would hold that defendant has failed to establish a prima facie case under *Rose v. Mitchell.*

---

5. Three foreperson selections during this time had been made by other judges. *Guice v. Fortenberry*, 722 F.2d 276, 278 (5th Cir.1984).

